ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TRANSPORTE RODRÍGUEZ ASFALTO, INC.<br><br>Apelada<br><br>v.<br><br>CJO CONSTRUCTION CORP.<br><br>Apelante | KLAN202400673 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>CIVIL Núm.: D CD2018-0174<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 18 de octubre de 2024.

CJO Construction Corp., solicita la revisión de la Sentencia que emitió el Tribunal de Primera Instancia, Sala de Bayamón, el 2 de mayo de 2024, notificada el 15 de mayo de 2024. En la Sentencia el foro primario declaró *Ha Lugar* la demanda de cobro de dinero incoada por la demandante Transporte Rodríguez Asfalto, Inc.

Por los fundamentos que exponemos a continuación, *Confirmamos* la Sentencia apelada.

## I.

El 11 de abril de 2018 Transporte Rodríguez Asfalto, Inc. (Transporte Rodríguez) presentó una demanda de cobro de dinero contra CJO Construction, Corp. (CJO). En síntesis, alegó que le vendió a CJO la cantidad de 20,316.60 toneladas de asfalto a razón de $70.00 por tonelada, para un total de compra de

$1,422,162.00. Indicó que CJO solo le pagó $1,272,132.00, quedando a deberle $150,030.00. Adujo que CJO retuvo esa cantidad al alegar que la Autoridad de Carreteras, el dueño de la obra, le había descontado ese monto a tenor con unas disposiciones contractuales de ajuste por combustible. Transporte Rodríguez sostuvo que no suscribió ningún contrato con la Autoridad de Carreteras y que el descuento que realizó CJO por ajuste de combustible, fue unilateral, improcedente y contrario a derecho. Así, las cosas, Transporte Rodríguez requirió el pago de $153,033, más daños y perjuicios, costas y honorarios de abogado.

El 25 de mayo de 2018, CJO contestó la demanda. En esencia, alegó que el ajuste en el precio por producto asfáltico incorporado a la obra fue realizado por la Autoridad de Carreteras y Transportación, bajo los términos y condiciones de contratación del contrato de obra pública AC-200585. Sostuvo que los descuentos por concepto de ajuste de combustible le aplicaba a Transporte Rodríguez.

Luego de ciertos asuntos procesales, CJO presentó una *Solicitud de Sentencia Sumaria.* Transporte Rodríguez se opuso. Evaluado el asunto, el 3 de julio de 2020, el Tribunal de Instancia denegó la petición. No obstante, en la *Resolución* emitió ciertos hechos incontrovertidos y las controversias pendientes. Entre los asuntos a dilucidarse mencionó, en esencia, si CJO podía descontar de forma unilateral los $150,030.00 a Transporte Rodríguez; si el descuento por ajuste de combustible realizado por la Autoridad de Carreteras a su contratista CJO, le era de aplicación al subcontratista Transporte Rodríguez con motivo de su relación contractual con CJO. A su vez, mencionó que había que verificar si el subcontrato entre CJO y Betterecycling

establecía que esta última asumiría un descuento por ajuste de combustible.[1]

Para disponer de las controversias, el Tribunal de Instancia celebró el juicio en su fondo los días 22 y 23 de abril de 2024. Por Transporte Rodríguez testificaron el Sr. Jorge Díaz Irizarry, el Sr. Jorge Arturo Díaz Mayoral y el Sr. Héctor Rodríguez Valle, presidente de la corporación demandante. Por CJO testificaron el Sr. Carlos Ortiz Alvarado, presidente de la corporación demandada, y el Ing. Eugenio Montes Camacho.

Evaluada la prueba, el 2 de mayo de 2024, notificada el 15 de mayo de 2024, el foro primario declaró *Ha Lugar* la demanda de cobro de dinero que presentó Transporte Rodríguez. En la Sentencia, el foro primario recibió la siguiente prueba documental[2]:

> Exhibit 1: Contrato entre CJO Construction, Corp. y Puerto Rico Asfalt del 13 de abril de 2016.
> Exhibit 2-A: Expediente Certificado Autoridad de Carreteras con los correspondientes comprobantes por pagar. Exhibits 2-B al 2-G.
> Exhibit 3: Contrato de Sub-Arrendamiento Planta de Carolina
> Exhibit 4: Sub-Contrato de Obra Miscelánea, total de $1,141,041.00 del 14/julio/2016
> Exhibit 5: Sub-Contrato de Obra Miscelánea, total de $8,000.00 del 14/julio/2016
>
> Parte Demandante:
>
> Exhibit 1: Subcontrato entre Constructora Meléndez y Betterecycling Corporation, LLC del 26 de julio de 2016
>
> Parte Demandada:
>
> Exhibit 1: Programa de Control de Calidad Enmendado del 12 de octubre de 2016

Aquilatada la prueba testifical y documental, el foro primario emitió las determinaciones de hechos, entre ellas, las siguientes:

---

[1] Apéndice págs. 348-349.
[2] Apéndice págs. 688-689.

3. El 25 de abril de 2026, la demandada y contratista, CJO Construction Corp, y el dueño de la obra, Autoridad de Carreteras suscribieron un Contrato de Obra, para que el contratista se encargara de realizar la pavimentación de la Carr. Núm. 21 desde el Km. 2.00 hasta el km, 27.1 entre los municipios de Toa Baja y Dorado, Contrato AC200285.

4. Conforme el contrato suscrito entre ACT y CJO, el contratista se obligaba a realizar el Proyecto Federal identificado en el contrato como "Federal Aid Project: MP-2 (71) -AC-200285 (R000002475) Pavement Rehabilitation Highway PR-2 from km. 2.00 to km, 27.10, Municipalities of Toa Baja-Dorado, Puerto Rico; por la cantidad de $2,443,000.00.

5. Como parte del contrato entre la Autoridad de Carreteras y Trasportación Pública y CJO Construction, Corp., se estableció una cláusula de provisión especial sobre Ajuste de Precio de Combustible ("Special Provision Price Adjustment Clause Hot Plant Mix Bituminous Pavement").

6. La mencionada cláusula "Special Provision Price Adjustment Clause Hot Plant Mix Bituminous Pavement", en lo pertinente al caso, expresa lo siguiente:

> 1.0 GENERAL-The current world situation is affecting the supplies and price of petroleum and may cause unpredictable fluctuation in the future cost of materials dependent on petroleum products. This clause will provide either an additional compensation to the Contractor or a credit to the Authority, depending upon increases or decreases in the price of the petroleum.

7. La cláusula de ajuste por combustible "Special Provision Price Adjustment Clause Hot Plant Mix Bituminous Pavement", en este caso es aplicable solamente entre el dueño de la obra, la Autoridad de Carreteras y Transportación, y su contratista CJO Construction, Corp.

8. El 14 de julio del 2016, la parte demandada, CJO Construction Corp. y Betterecycling Corp., suscribieron un Subcontrato de Obra Miscelánea, para que esta última como productora de asfalto, le vendiera dicho material a la demandada para el proyecto de pavimentación AC200285.

9. Surge del referido sub-contrato que CJO sub-contrató los servicios de Betterecycling Corp., para que este le supliera los siguientes productos asfálticos y se dispone:

-Hot Plant Mix Asphalt Superpave SPS (Alt A), asfalto tomado en planta a un precio fijo de $70.00 la tonelada. -Hot Plant Mix Asphalt Superpave SFB (At B), asfalto tomado en planta a un precio fijo de $ 70.00 la tonelada.

-Control Strip Section (At C), asfalto tomado en planta a un precio fijo de $70.00 la tonelada.

10. El 25 de agosto de 2016, CJO Construction Corp, sometió la Orden de Compra número 10550 a Betterecycling Corp. para adquirir 15,471 toneladas de asfalto.

11. Conforme al Subcontrato de Obra Miscelánea entre CJO Construction, Corp. y Betterecycling Corp., no existe cláusula alguna que obligue al subcontratista a asumir el descuento y/o bonificación por la provisión especial de ajuste por combustible, la cual se establece en el contrato entre la Autoridad de Carreteras y el demandado CJO Construction, Corp.

12. El 26 de septiembre de 2016, Betterecycling Corp. despide a sus empleados y le otorga en arrendamiento a Puerto Rico Asphalt, LLC., su planta productora de asfalto ubicada en Carolina.

13. El 1 de octubre de 2016, Puerto Rico Asphalt, LIC. - como arrendatario de Betterecycling Corp. le subarrienda a la demandante Transporte Rodríguez Asfalto, Inc. la planta de asfalto localizada en Carolina.

14. El contratista CJO Construction, Corp., contrató con el dueño de la obra Autoridad de Carreteras y Transportación Pública a suplirle el asfalto para el proyecto AC-200285 a razón de $114.50 la tonelada.

15. El contratista de la obra CJO Construction Corp., adquiría de Betterecycling Corp, subsiguientemente de Puerto Rico Asphalt, LLC y luego, de Transporte Rodríguez Asfalto, el asfalto para el proyecto identificado como AC-200285 al precio fijo de $70.00 por tonelada.

16. Betterecycling Corp. no fue contratista y/o suscribió contrató [sic] con la Autoridad de Carreteras para el Proyecto identificado como AC200285.

17. Betterecycling Corp. se limitó, durante el tiempo que operó la planta de asfalto de Carolina, a suplir el asfalto al contratista de la corporación pública y demandado CJO Construction Corp., con las especificaciones de la mezcla asfáltica a un precio fijo de $70.00 la tonelada.

18. Puerto Rico Asphalt, LLC. no fue contratista y/o suscribió contrato con la Autoridad de Carreteras para el proyecto identificado como AC200285.

19. Puerto Rico Asphalt, LLC., se limitó, durante el poco tiempo que operó la planta de asfalto de Carolina, a suplir el asfalto al contratista de la Corporación Pública y demandado CJO Construction Corp., con las especificaciones de la mezcla asfáltica a un precio fijo de $70.00 la tonelada.

20. Transporte Rodríguez Asfalto, Inc. no fue contratista y/o suscribió contrató [sic] con la Autoridad de Carreteras para el Proyecto identificado como AC200285.

21. Transporte Rodríguez Asfalto, Inc. le continuó vendiendo el asfalto al contratista de la corporación pública y demandado CJO Construction Corp. con las mismas especificaciones de la mezcla asfáltica a un precio fijo de $70.00 la tonelada, de la misma forma que lo hicieron Betterecycling Corp. y Puerto Rico Asphalt, LLC.

22. Betterecycling, Corp. no acordó con la demandada, CJO Construction, Corp. que asumiría descuento y/o bonificación alguna por ajuste de combustible que se le realizara al demandado y contratista de la obra, por parte del dueño de la obra ACT.

23. El Presidente de Betterecycling, Corp. para la fecha de los hechos objeto de este caso, Sr. Jorge Luis Díaz Irizarry, reconoció haber acordado asumir el ajuste de combustible en otros sub contratos de suplido de asfalto, pero tal obligación se establece expresamente mediante una cláusula expresa en los contratos y dependerá del precio negociado entre las partes.

24. El Presidente de Betterecycling, Corp. para la fecha de los hechos objeto de este caso, Sr. Jorge Luis Díaz Irizarry, indicó que el precio estipulado en el subcontrato con el demandado CJO Construction de $70.00 por tonelada de mezcla asfáltica fue un precio especial, prácticamente al costo para que el demandado pudiera efectuar el proyecto contratado con la Autoridad de Carreteras. Conforme esas particularidades, jamás las partes acordaron el que el subcontratista, Betterecycling, Corp., asumiría la obligación de ajuste por combustible. De haberse asumido por el subcontratista tenía que estar expresamente en el subcontrato, lo que no ocurrió.

24.[sic] Puerto Rico Asphalt, LLC, tampoco acordó, ni suscribió contrato alguno con la demandada, CJO, donde asumiría el descuento y/o bonificación por ajuste de combustible que se le realizara al demandado y contratista de la obra CJO por parte del dueño de la obra ACT.

25. Transporte Rodríguez Asfalto, Inc., no acordó ni suscribió contrato alguno con la demandada, CJO, donde asumiría el descuento y/o bonificación por ajuste de

combustible que se le realizara al demandado y contratista de la obra CJO por parte del dueño de la obra ACT.

26. El subcontrato entre CJO y Bettereycling, Corp., en el párrafo identificado como CUARTO, disponía y citamos:

> "El SUB-CONTARATISTA ejecutará para el CONTRATISTA la (s) partidas (s) antes mencionada (s)en la misma forma como el CONTRATISTA se obligó a realizarla (s) para ACT en estricto cumplimiento con lo expresado en los planos y especificaciones también forman parte de este sub-contrato."

27. Lo dispuesto en la cláusula CUATRO del subcontrato con relación a "en estricto cumplimiento con lo expresado en cuanto a los planos y especificaciones", se refería a los planos de la obra y las especificaciones de la mezcla y/o productos asfálticos. Tal expresión contractual no incluye, ni pretendió incluir, la cláusula de provisión especial sobre ajuste de combustible con la cual se obligó el demandado CJO Construction con la Autoridad de Carreteras.

28. De la cantidad adquirida en asfalto por CJO Construction Corp. para el Proyecto AC-2002085, éste dejó de pagar a Transporte Rodríguez Asfalto la suma de $150,030.00.

29. El descuento por ajuste de combustible realizado por el dueño de la obra Autoridad de Carreteras a su contratista CJO Construction Corp. no le es de aplicación al suplidor de asfalto Transporte Rodriguez Asfalto, Inc.

30. La compañía CJO no podía descontar de forma unilateral la suma de $150,030.00 del precio total del suplido de asfalto a la parte demandante.

32. El descuento realizado a TRA por CJO Construction, Corp., en concepto de ajuste por combustible, es improcedente.

33. El descuento por concepto de ajuste de combustible que le realizó el dueño de la obra Autoridad de Carreteras y Transportación a su contratista CJO Construction Corp. fue realizado sobre el precio de $114.50 por tonelada de asfalto, según estipulado entre estas partes contratantes.

Otras Estipulaciones, conforme al Informe de Conferencia con Antelación a Juicio, [……]

Tras evaluar el derecho, junto a los hechos probados, el Foro Primario le ordenó a CJO a pagar $150,030 por concepto de principal adeudado, más $5,000 por honorarios de abogado por temeridad.

Para arribar a esta conclusión, el foro primario razonó lo siguiente:

La prueba testifical demostró fehacientemente que la parte demandante no se obligó con el demandado CJO a asumir ajuste alguno por la provisión especial de ajuste de combustible. Esa cláusula es exigible conforme a los hechos del presente caso únicamente entre el dueño de la obra, Autoridad de Carreteras, y CJO Construction, Corp., su contratista. Además, surgió de la prueba que el señor Diaz Irizarry, cuando se negociaba el contrato con CJO por parte de Betterecycling, dio instrucciones claras de no asumir el ajuste de combustible y nunca se obligó a asumirlo de forma verbal, como intentó establecer la parte demandada con la prueba testifical.

Concluimos que los demandados no presentaron prueba alguna o argumento legal que justifique el no pagar a Transporte Rodriguez Asfalto, Inc. la cantidad de $150,030.00 por las toneladas de asfalto vendidas al demandado para el proyecto identificado como AC-200285.[3]

En descuerdo con esta determinación, el 30 de mayo de 2024, el demandado CJO presentó una *Moción para que se Determinen Hechos Adicionales y en Solicitud de Reconsideración*.[4] El 13 de junio de 2024, notificada el 21 de junio siguiente, el foro primario denegó este petitorio.[5]

Aun inconforme, el 16 de julio de 2024, CJO presentó una apelación en nuestro foro intermedio. Adujo que incidió el TPI en dos formas:

**Primero**: Al no modificar las determinaciones de hechos y al no realizar las determinaciones de hechos adicionales propuestas que surgían de la prueba

---

[3] Apéndice pág. 704.
[4] Apéndice págs. 723-758.
[5] El apelante no incluyó este documento en el apéndice. No obstante, ambas partes afirman que el foro primario emitió y notificó la decisión en las fechas aquí mencionadas, por lo que, damos por cierta la notificación.

admitida en evidencia, y del testimonio de los testigos en el juicio; que inciden en la determinación de temeridad. Tal proceder constituye un erro manifiesto y abuso de discreción que amerita la revocación de la determinación de temeridad recogida en la sentencia.

**Segundo**: Al concluir que CJO Construction incurrió en temeridad al litigar un pleito en el cual carecía de prueba para fundamentar las alegaciones.

Recibido el recurso, la transcripción de la prueba oral y los alegatos de ambas partes, estamos en posición de resolver.

## II.

## A.

**Apreciación de prueba**

Como es sabido, toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. López García v. López García, 200 DPR 50, 59 (2018); Olmeda Nazario v. Sueiro Jiménez, 123 DPR 294 (1989). De igual manera, en nuestro ordenamiento jurídico "es principio reiterado que los tribunales apelativos otorgarán gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia". SLG Rivera-Pérez v. SLG Díaz-Doe et al., 207 DPR 636, 657 (2021).

Esta norma aplica, salvo que medie error manifiesto, pasión, prejuicio o parcialidad y, por ende, abuso de discreción. Sucn. Mena Pamias et al. v. Meléndez et al., 212 DPR 758, 774 (2023); Pueblo v. Hernández Doble, 210 DPR 850 (2022); SLG Fernández-Bernal v. RAD-MAN et al., 208 DPR 310, 338 (2021).

En ese aspecto, como norma general, los foros apelativos evitarán, "sustituir las determinaciones de hecho que hace un foro inferior debido a que este es quien ve y escucha a los testigos, y, por ende, está en mejor posición de evaluar y aquilatar la prueba presentada en el juicio." SLG Rivera-Pérez v. SLG Díaz-Doe et al., *supra*, pág. 658; Dávila Nieves v. Meléndez Marín, 187 DPR 750,

770, 771 (2013); SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 356 (2009). Después de todo, el "foro apelativo cuenta solamente con 'records mudos e inexpresivos'". SLG Rivera-Pérez v. SLG Díaz-Doe et al., *supra*, pág. 658; SLG Rivera Carrasquillo v. AAA, *supra*, pág. 356; Trinidad v. Chade, 153 DPR 280, 291 (2001); Pérez Cruz v. Hosp. La Concepción, 115 DPR 721, 728 (1984). Es decir, es el Tribunal de Primera Instancia el que tuvo la oportunidad de oír y ver el comportamiento de la testigo. Por ello, cuando la evidencia directa de un testigo le merece entero crédito a este, ello es prueba suficiente de cualquier hecho. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016); SLG Torres-Matundan v. Centro Patología, 193 DPR 920 (2015); Meléndez Vega v. El Vocero de PR, 189 DPR 123 (2013).

De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. Sucn. Rosado v. Acevedo Marrero, *supra*, pág. 917-918; Rivera Menéndez v. Action Service, 185 DPR 431, 444 (2012); SLG Rivera Carrasquillo v. AAA, *supra*, pág. 356; Flores v. Soc. de Gananciales, 146 DPR 45, 49 (1998).

La importancia de los hechos reside en que, a partir de estos, los tribunales de instancia precisan las controversias, elaboran sus conclusiones de derecho y resuelven el caso. Dávila Nieves v. Meléndez Marín, supra, pág. 770. Como foro apelativo, tenemos la tarea de examinar cómo los tribunales inferiores aplican el derecho a los hechos particulares de cada caso. Dávila Nieves v. Meléndez Marín, *supra*. Por eso, aunque alguna prueba sostenga las determinaciones de hechos del tribunal, "si de un análisis de la totalidad de la evidencia este Tribunal queda

convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas". Íd, pág. 772.

**B.**

**Determinaciones de hechos adicionales**

Sabido es que la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, dispone, en lo pertinente, que "[e]n todos los pleitos el tribunal especificará los hechos probados y consignará separadamente sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda." Agrega la referida Regla que, "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos." Íd.

Afín con lo anterior, la Regla 43.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 43.3, dispone, en lo relativo a las determinaciones de hechos y conclusiones de derecho adicionales, que:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, o podrá enmendar o hacer determinaciones adicionales y podrá enmendar la sentencia en conformidad.

El Tribunal Supremo ha advertido que de la letra clara de la citada Regla 43.3 de Procedimiento Civil, *supra*, se desprende y resulta obvio que el tribunal de instancia no está obligado a hacer determinaciones de hecho y de derecho adicionales luego de ser solicitadas por una o más partes; ello, de estimar que las mismas

no proceden. <u>Carattini v. Collazo Sys. Analysis, Inc.</u>, 158 DPR 345, 357 (2003); <u>Blás v. Hosp. Guadalupe</u>, 146 DPR 267, 319 (1998). Ciertamente, el juez tiene discreción para denegar tal moción, pues, en esencia, sólo procede para corregir errores manifiestos de hechos o de derecho. Íd.

## C.

### Contratos bajo el Código Civil de 1930[6]

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371. Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes y sus causahabientes, y deben cumplirse a tenor de este. Art. 1044 del Código Civil, 31 LPRA sec. 2994.

Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 LPRA sec. 3391; <u>Díaz Ayala et. al. v. ELA</u>, 153 DPR 675, 692 (2001).

Cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas. Artículo 1233 del Código Civil, 31 LPRA sec. 3471. Para juzgar de la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato. Artículo 1234 del Código Civil, 31 LPRA sec. 3472.

---

[6] El Código Civil de Puerto Rico de 1930, fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55-2020. En este caso, haremos referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable al caso que nos ocupa.

Cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar. Artículo 1235 del Código Civil, 31 LPRA sec. 3473.

**D.**

**Temeridad**

La Regla 44.1 (d) de Procedimiento Civil, *supra*, R. 44.1 (d), dispone que:

> En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

El Tribunal Supremo ha delineado en términos generales que:

> [E]l amplio concepto de temeridad conlleva aquellas actuaciones de un litigante que lleven a un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos. Un litigante perdidoso actúa con temeridad cuando por su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito.

SLG González-Figueroa v. SLG et al., 209 DPR 138, 148-149 (2022).

Por otro lado, "es claramente temeraria la parte que insiste contumazmente en alegar algo sin alguna prueba fehaciente que lo apoye, que niega los hechos que le constan o son de fácil corroboración y dilata los procedimientos judiciales para no responder por su obligación". SLG González-Figueroa v. SLG et al., *supra*. Como la temeridad es contraria a los principios de eficiencia en la administración de la justicia y al buen funcionamiento de los tribunales, la sanción judicial dispuesta en la Regla 44 de Procedimiento Civil, 32 LPRA Ap. V, es un

mecanismo poderoso para garantizar "una solución justa, rápida y económica de todo procedimiento". Íd. Ahora bien, el Tribunal Supremo ha resuelto que no es un litigante temeroso quien plantea asuntos complejos y novedosos sobre los cuales no existen precedentes vinculantes o cuando exista alguna desavenencia honesta sobre el derecho aplicable a los hechos del caso. Íd. No obstante, la imposición de esta sanción descansa en la sana discreción judicial, que solo será variada en apelación si se demuestra abuso de discreción. SLG González-Figueroa v. SLG et al., supra, pág. 150.

A la luz de la normativa jurídica antes mencionada, aplicada a los hechos de este caso, disponemos.

## III.

En el primer señalamiento de error CJO alegó que la controversia surgió porque el subcontrato entre Betterecycling y CJO, establecía en la cláusula cuatro (4), que el subcontratista se obligaba a cumplir con los planos y especificaciones del contrato con la Autoridad de Carreteras. Mencionó que entre las especificaciones del contrato de CJO con la Autoridad de Carreteras se encontraba el "Special Provisions", el cual contenía la cláusula de ajuste de combustible. Adujo que para que esa especificación estuviese excluida, así debía pactarse o establecerse por escrito.

CJO también alegó que el foro primario debió aceptar las determinaciones de hechos adicionales que propuso, pues de estas surgían aspectos medulares sobre el contrato con la Autoridad de Carreteras. Que sus hechos propuestos derrotan la determinación de temeridad realizada. Además, que incidió en error en la apreciación de la prueba.

Por su parte, Transporte Rodríguez alegó que CJO pretendió que se aplicara una cláusula de ajuste de combustible al suplidor de asfalto, cuando esa obligación es únicamente aplicable entre el dueño de la obra, Autoridad de Carreteras, y CJO. Reiteró que la obligación entre CJO y Transporte Rodríguez era suplirle un material asfáltico que cumpliera con los planos y especificaciones del proyecto. Mencionó que la posición de CJO durante los años de litigio, no estaba sustentada en la prueba fehaciente del caso, sino en lo que él entendía que procedía.

Evaluamos.

En síntesis, el foro primario tenía que dirimir si el subcontrato entre CJO y Betterecycling, establecía que el subcontratista asumiría un descuento por ajuste de combustible. Referido ajuste surgía de la cláusula de "Special Provisions" plasmada en el contrato entre el contratista CJO y la Autoridad de Carreteras. Esto es, si el descuento por ajuste de combustible que realizó el dueño de la obra a su contratista CJO, le aplicaba al subcontratista Transporte Rodríguez.

Para ese análisis el foro primario evaluó la prueba documental y testifical. Luego de impartir credibilidad a los testimonios, aclaró la controversia, para lo cual emitió sobre treinta y tres (33) determinaciones de hechos.

De estos hechos surgió que en el subcontrato de Obra Miscelánea entre CJO Construction, Corp. y Betterecycling Corp., no existía cláusula alguna que obligara al subcontratista a asumir el ajuste por combustible, la cual se establecía en el contrato entre la Autoridad de Carreteras y el demandado CJO Construction.[7] El

---

[7] Determinación de Hechos número 11.

Foro de Instancia revisó que Betterecycling no acordó con la demandada, CJO Construction que asumiría descuento y/o bonificación alguna por ajuste de combustible que se le realizara al demandado y contratista de la obra, por parte del dueño de la obra Autoridad de Carreteras.[8]  En este punto, el Presidente de Betterecycling para la fecha de los hechos objeto de este caso, Sr. Jorge Luis Díaz Irizarry, indicó que el precio estipulado en el subcontrato con el demandado CJO Construction de $70.00 por tonelada de mezcla asfáltica fue un precio especial, prácticamente al costo para que el demandado pudiera efectuar el proyecto contratado con la Autoridad de Carreteras. Conforme esas particularidades, jamás las partes acordaron el que el subcontratista, Betterecycling, asumiría la obligación de ajuste por combustible.  De haberse asumido por el subcontratista tenía que estar expresamente en el subcontrato, lo que no ocurrió.[9]

A tenor con estos hechos, el Foro Primario pudo concluir que la parte demandante no se obligó a asumir el ajuste por combustible pactado entre CJO y la Autoridad de Carreteras.  Que la referida cláusula de ajuste era solamente aplicable entre el contratista CJO y el dueño de la obra, la Autoridad de Carreteras.

En cuanto al alcance de la cláusula 4 del subcontrato entre CJO y Betterecycling, la cual establecía que el subcontratista debía cumplir con los planos y especificaciones, el foro primario justipreció lo siguiente:

> Lo dispuesto en la cláusula CUATRO del subcontrato con relación a "en estricto cumplimiento con lo expresado en cuanto a los planos y especificaciones", **se refería a los planos de la obra y las especificaciones de la mezcla y/o productos asfálticos**. Tal expresión contractual no incluye, ni

---

[8] Determinación de Hechos número 22.
[9] Determinación de Hechos número 24.

pretendió incluir, la cláusula de provisión especial sobre ajuste de combustible con la cual se obligó el demandado CJO Construction con la Autoridad de Carreteras. [10] (Énfasis nuestro).

Esta determinación de la cláusula 4 del contrato entre Betterecycling y CJO, donde se alude a los planos y especificaciones, la verificamos con el testimonio del señor Jorge Luis Díaz Irizarry, quien declaró lo siguiente:

P. ¿A qué se refiere esta cláusula? Si usted lo sabe.

R. Pues, que obviamente la Autoridad especifica cuánto es el espesor, cuánto es el porciento de compactación que tiene que tener, el tipo de asfalto que tiene que tener, las especificaciones que tiene que tener. Obviamente, el asfalto que se aplica y tiene un montón de especificaciones técnicas que aplican específicamente al trabajo que se va a ejecutar.

P. En esa cláusula, ¿Se dispuso algo del ajuste de combustible?

R. No.[11]

Aclarada la controversia sobre la no aplicabilidad de la cláusula del ajuste de combustible a Transporte Rodríguez, como sucesor del subcontrato de Betterecycling con CJO, el TPI plasmó en los hechos que, "el descuento por ajuste de combustible realizado por el dueño de la obra Autoridad de Carreteras a su contratista CJO Construction Corp. no le es de aplicación al suplidor de asfalto Transporte Rodriguez Asfalto, Inc."[12] Consecuentemente, el foro primario determinó que la compañía CJO no podía descontar la suma de $150,030 del precio total del suplido de asfalto a la parte demandante Transporte Rodríguez.[13]

Luego de un análisis integral de la transcripción de la prueba oral y los documentos del expediente, como foro revisor intermedio, estamos satisfechos, pues así lo corroboramos, con

---

[10] Determinación de Hechos número 27.
[11]Transcripción de la prueba oral de 22 de abril de 2024 pág, 32, líneas 11-25.
[12] Determinación de Hechos número 29.
[13] Determinación de Hechos número 30.

las determinaciones de hechos que el Tribunal de Instancia plasmó en la *Sentencia*.   A partir de estos hechos, a la luz del derecho aplicable a los contratos, el foro primario concluyó correctamente que procedía el pago que Transporte Rodríguez reclamó en la demanda.   El Apelante no nos demostró en su escrito que el foro primario incidió en la apreciación de la prueba y en la aplicación del derecho, a tal punto que la determinación final fuese errónea.

Por igual criterio, nos abstenemos de intervenir con la decisión del foro primario de no acoger las determinaciones de hechos que propuso CJO.   Trasciende de la Regla 43.3 de Procedimiento Civil y la jurisprudencia interpretativa que el juez tiene discreción para denegar tal petición, en ausencia de errores manifiestos de hechos o de derecho.[14]

CJO no adujo razones que demuestren pasión, prejuicio, parcialidad o error manifiesto que ameriten nuestra intervención en una determinación discrecional del Foro de Instancia, como es la concesión o denegación de determinación de hechos adicionales y/o conclusiones de derecho.

Reiteramos que es el Tribunal de Primera Instancia quien está en mejor posición para determinar si proceden los hechos propuestos o no, pues fue dicho foro quien estuvo en la primera línea de contacto con la prueba.   En esa labor, no hemos identificado errores patentes de hechos que nos permitan intervenir con la discreción del foro de instancia en su evaluación. En consecuencia, nos remitimos a la regla general de deferencia al foro revisado.

---

[14] Véase <u>Carattini v. Collazo Sys. Analysis, Inc.</u>, *supra*.

CJO también alegó que no es temerario quien plantea asuntos complejos y novedosos, sobre los cuales no existan precedentes vinculantes o cuando exista alguna desavenencia honesta en cuanto al derecho aplicable a los hechos del caso.[15] Mencionó que hubo una novación modificativa del contrato mediante el cual Transporte Rodríguez quedó obligado por el subcontrato entre Bettercyling, luego Puerto Rico Asphalt. Adujo que su defensa estuvo amparada en un juicio honesto sobre la aplicabilidad de una "Special Provisions" a un productor y suplidor de asfalto, sobre un asunto novel en el cual no existe precedente.

Transporte Rodríguez alegó que procedía la temeridad pues se estuvo litigando un caso donde los contratos claramente establecían de quien era la responsabilidad de asumir el ajuste por combustible. Indicó que, durante el trámite del caso, se llevaron a cabo vistas transaccionales, sin resultados. Señaló que la controversia en el caso no es compleja o novel.

Revisamos.

El foro primario le impuso al demandado CJO la suma de $5,000 de honorarios por temeridad. Para ello, en síntesis, explicó que la demanda se radicó hace aproximadamente siete (7) años y que, durante el juicio en su fondo, la parte demandada no contaba con prueba que pudiera sostener sus defensas o probar que no procedía el pagar la cantidad adeudada, que unilateralmente dejó de pagar a la demandante.[16]

Evaluamos.

El 11 de abril de 2018 Transporte Rodríguez presentó la *Demanda* de cobro de dinero contra CJO. Este trámite se extendió

---

[15] Citando a González Ramos v. Pacheco Romero, 2022 TSPR 43.
[16] Apéndice pág. 705.

por más de seis (6) años y culminó con el juicio en su fondo, en el cual, el demandante Transporte Rodríguez resultó victorioso. Durante esa gestión, el tribunal de instancia tuvo ante sí el manejo, la administración del caso y presenció la conducta de las partes.

En revisión, tuvimos a bien corroborar y confirmar que CJO no presentó la prueba necesaria para probar sus defensas. Tampoco nos demostró que estuviese presente alguno de los criterios que justifique intervenir con la discreción del foro primario de imponer los honorarios por temeridad. La cuantía tampoco resulta exagerada en consideración al tiempo en que se estuvo litigando esta causa. En estos casos, es norma reiterada que los foros apelativos sólo debemos intervenir con determinaciones de temeridad e imposiciones de honorarios cuando medie un claro abuso de discreción. Esto no surge del expediente, por tanto, no vemos razón para intervenir con la determinación aquí cuestionada.

## IV.

Por las razones aquí expresadas, *Confirmamos* la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones